[PHILADELPHIA, APRIL 8TH, 1839.]

SLAYMAKER and Another *against* IRWIN and Another.

IN ERROR.

```
4wh369
159  618
```
```
4 Wh 369
25 SC 203
```
```
4 Wh 369
27 SC 372
```

The plaintiffs, in a letter to the defendants who were manufacturers of iron, said, "We will take 100 tons of Washington pig metal, the same quality as that received last year from you, at $30 per ton, delivered at W. as early in the spring as the navigation of the river will admit of, and the further quantity of 100 tons at any time between the 1st of July and the 1st of October," &c. The defendants replied, "We will have no metal to deliver after the spring freshet, or in case of no freshet in the river, in the canal immediately after. Therefore it will be necessary for you to say what quantity you will take on spring delivery as it will be out of our power to accommodate you at the time specified in your last note. Our terms are $30 per ton, &c. . . . . . An immediate answer is requested as we are receiving orders daily and are unable to decide as to the quantity we may have to sell." The plaintiffs, in answer, said, "We will take three ark loads if delivered in that way, which we would greatly prefer, or 150 tons if delivered by the canal. The terms proposed we will comply with :" *Held*, that these letters did not constitute a contract on the part of the defendants to furnish the iron asked for in the plaintiffs' last letter; the defendants not having replied to the plaintiffs' last letter.

WRIT of error to the Court of Common Pleas of Chester County, to remove the record of an action on the case, brought by H. Y. Slaymaker and S. R. Slaymaker, partners under the firm of H. Y. Slaymaker and Co., against Samuel Irwin and William W. Houston trading under the firm of Irwin & Houston.

The action was brought to recover damages, for not delivering to the plaintiffs a certain quantity of iron which, it was alleged, the defendants had contracted to deliver to the plaintiffs. On the trial, before DARLINGTON, President, on the 19th of May, 1838, the plaintiffs, to prove the alleged contract, gave in evidence the correspondence upon which they relied in support of their case. The first in order of time, was from the defendants to the plaintiffs as follows:

"Bellefonte, Jan. 23d, 1836.

"Gentlemen :—Sometime since I received your letter of explanation which was altogether satisfactory, and now have yours of the 20th inst. before me; in answer to which I can only remark, that less than thirty dollars per ton, we decline selling for, either deliverable at Columbia in canal, or at Wrightsville, in arks. All the metal now at Columbia is sold, and more, for spring delivery. As you don't say any thing as to the time of delivery, I presume you

(Slaymaker *v*. Irwin.)

mean on the opening of the navigation, which is the shortest date we could contract for.

Respectfully, yours,
IRWIN & HOUSTON."

From the plaintiffs to the defendants.

" Margaretta, Jan. 29, 1836.

" Gentlemen,

Your favour of the 23d inst. was received last evening. We will take one hundred ton of Washington pig metal; the same quality as that received last year from you at thirty dollars per ton, delivered at Wrightsville as early in the spring as the navigation of the river will admit of; and the further quantity of one hundred tons, at any time between the first of July and the first of October. If the river is not in order at any time during those three months to deliver them at Wrightsville, then immediately after the first of October they may be delivered at Columbia, for which we will give the same price, all to be at six months' credit, from the time of delivery.

We will take the arks for what they are selling for at Wrightsville or Columbia, at the time of delivery, you to be at the expense of unloading, and we at the expense of weighing.

We are very respectfully, yours, &c.
H. Y. SLAYMAKER & Co."

" Messrs. Irwin & Houston.

Please in future to direct to Margaretta Furnace, York County, Pennsylvania."

From the defendants to the plaintiffs.

"Bellefonte, Feb. 15. 1836.

H. Y. Slaymaker & Co.

" Gentlemen,

In answer to your last letter I would inform you, that our lease expires on the first of April next ensuing, and that we will have no metal to deliver after the spring freshet, or in case of no freshet in the river, in the canal immediately after. Therefore it will be necessary for you to say what quantity you will take on spring delivery, as it will be out of our power to accommodate you at the time specified in your last note. Our terms are thirty dollars per ton, if delivered in arks at Wrightsville, you paying the unloading and weighing and the customary price for arks. If delivered in the canal, thirty dollars a ton at Columbia: we paying the unloading and you the weighing. In both cases a credit of six months is given from delivery. An immediate answer is requested as we are receiving orders daily, and are unable to decide as to the quantity we may have to sell.

Respectfully,

H. Y. Slaymaker & Co.          IRWIN & HOUSTON."

(Slaymaker *v.* Irwin.)

From the plaintiffs to the defendants.

" Margaretta, Feb. 22d. 1886.

" Messrs. Irwin & Houston,

Gentlemen :—Your favour of the 15th inst. was duly received; from which we learn that you will not have any metal for sale after the spring delivery, and in which you inquire what quantity we will take at that time; in reply to which, we say we will take three ark loads if delivered in that way, which we would greatly prefer, or one hundred and fifty tons if delivered by the canal. The terms proposed we will comply with.

Very respectfully, yours,

H. Y. SLAYMAKER & Co."

From the plaintiffs to Samuel Irwin, one of the defendants.

" Margaretta, May 5th, 1836.

" Samuel Irwin, Esq.

Dear Sir :—Last winter we contracted with the firm of Irwin & Houston for 150 tons of pig iron or three ark loads if delivered by the river, which was to be delivered this spring, and having understood that Mr. Houston has said that he had no pig iron coming on for us, we think it our duty to apprize you that the contract has not been complied with; and in case of a failure upon your part to do so, the disappointment will be very great and the loss heavy. We hope some arrangement may be made, by which we may be spared the pain of seeking redress.

We are yours, &c.

H. Y. SLAYMAKER & Co."

From the plaintiffs to the defendants.

" Margaretta, May 5th, 1836.

" Gentlemen,

We were much surprised to learn that it is not your intention to comply with your contract to deliver us three ark loads or 150 tons of pig metal this spring. And now after waiting some time and receiving no metal from you, and also having understood that your Mr. Houston, on his way down the river, had said we would not get any, we are obliged to credit the report, and now write to inquire into the cause of this, to us, very extraordinary conduct. Hoping to hear soon from you, we are, very respectfully, yours,

H. Y. SLAYMAKER & Co."

From the defendants to the plaintiffs.

" Centre Furnace, May 18th, 1836.

" H. Y. Slaymaker & Co.

Gentlemen :—On my arrival at home the other day I found a

(Slaymaker *v.* Irwin.)

letter from your firm expressing much surprise, that I had not delivered you a quantity of pig metal this spring. Now sir, I am not only surprised, but really disappointed that you could make the assertion you have, without having a definite contract with me. You write to me to know whether and at what price I will sell metal. I answer you. You state that you take so much at certain times. I reply, that we can't deliver metal according to your request and proposition, and there the matter ends. How you can suppose that I would deliver metal to you without a specific contract, I am at a loss to imagine, after the treatment of last season; when I had, so far as a verbal contract is binding, every reason to expect you to fulfil, yet you declined and left me to my alternative. It might then have been very pleasant to supply yourself with metal below what you had agreed to pay me! I presume if it were otherwise, you would have completed your engagements. It might now be pleasant for you to have it to say, that you have delivered but 100 tons; our proposition was for 300 tons at stated times, and until delivered we decline closing for a part. I do not say such would have been the case, but such might have been. I had *no right* to make any allowance for your conduct, but rather to expect the strictest compliance with your propositions to be fulfilled by us. If you have been disappointed, I am sorry for it; but you can charge no blame on us, but rather on yourself, presuming that it was better to keep the proposition open to accept or refuse at your pleasure as the case might be.

Very respectfully,

Irwin & Houston."

Evidence was also given on both sides, respecting the price or value of marketable iron and other circumstances, not material to this report.

On the conclusion of the evidence, the plaintiffs' counsel requested the Court to charge and instruct the jury upon the following points, viz.:

" 1. Where the negotiation for the sale and delivery of an article of commerce is conducted by letter, the contract is completed when the answer containing the acceptance of a distinct proposition is dispatched by mail—provided it be done with due diligence, after the receipt of the letter containing the proposal and before the offer is withdrawn.

2. The letter of H. Y. Slaymaker & Co. of the twenty-second day of February, 1836, is an acceptance of a distinct proposition, and if dispatched with due diligence, completed the contract.

3. It was not necessary in order to consummate the agreement,

(Slaymaker *v.* Irwin.)

that the said letter of the 22d of February, 1836, should have been answered.

4. The ordinary measure of damages is the difference between the contract price of the article, and the price at the time it ought to have been delivered; but this rule is subject to exceptions.

5. If the jury believe that the plaintiffs were not able to procure the amount of iron contracted for, or any considerable proportion of it, for the use of their works immediately after the iron should have been delivered according to the terms of the contract, and that they were obliged to purchase iron to supply the deficiency occasioned by the breach of the contract, at a high price, and to adapt foundry metal to forge purposes at a considerable expense, this forms an exception to the ordinary rule; and the plaintiffs are entitled to such damages as will compensate them for the loss they have necessarily sustained."

And the defendants' counsel requested the Court to charge and instruct the jury in the following points:

" 1. There is no evidence in the case that the defendant or his partner offered to sell the plaintiffs any specific quantity of iron.

2. Until the quantity to be sold was mutually agreed upon between the parties, as well as the terms, there was no contract.

3. The plaintiffs' letter of the 22d of February, 1836, was a new and different offer from any they had before made; and even if it had been received by the defendants, did not bind them to accept it.

4. Any neglect or mistake of the plaintiffs in forwarding or directing the letter of the 22d of February, 1836, whereby it failed to reach the defendants, makes the case as though no such letter had been written.

5. The damages are not to be estimated by the rise of iron after suit commenced, nor by any other speculation which the plaintiffs might have made with it."

And thereupon the Court, after briefly stating the issues and points for the consideration of the jury, proceeded to answer the points proposed by the counsel for the plaintiffs, as well as those by the counsel for the defendants, as follows, viz.:

" And first as to the measure of damages, and in answer to the 4th and 5th points submitted on the part of the plaintiffs, and the 5th point submitted on the part of the defendants.

This is a special action on the case to recover damages for an alleged breach on the part of the defendants, or their failure to perform a solemn agreement, made by them to deliver to the plaintiffs

(Slaymaker *v.* Irwin.)

three ark loads or one hundred and fifty'tons of pig metal, during or immediately after the spring freshet of 1836. If such contract was made on the part of the defendants, and they have neglected or refused to perform it, the plaintiffs are entitled to a verdict for such damages as the jury think reasonable. But the law has established a rule for assessing those damages, which neither courts nor juries are at liberty to disregard. It is to be the difference between the price stipulated at the time of the delivery and the market price ; the price that the article might be procured for at the end of the time at which the delivery was to take place—in this case the difference between $30 per ton, and the price it could be purchased for at and immediately after the season of flood in the Susquehanna that year. If the article was scarce that year, and the different iron masters and dealers did not know where to apply for so large a quantity as 150 tons, it is reasonable to suppose that the price would be proportionably high ; but certainly it could be procured at some price, and whatever it would have cost to procure 150 tons immediately after the spring delivery of 1836, before the bringing of this action, above *thirty dollars per ton* would be the proper measure of damages. A full and liberal indemnity for the loss of the plaintiffs by the failure of the defendants, *at the time of failure,* is all the law allows; and means to impose no higher penalty on the defaulters. The damages therefore are not to be estimated by the rise in the price of iron after this suit commenced, or by any other speculation which the plaintiffs might have made with it, or any price he might have given in the fall or winter following, for he might have obtained iron to fulfil his contracts at the market price, be it ever so high.

The first point submitted on the part of the plaintiffs, is correct in the abstract; and so the jury are instructed. But when we come to the supposed application of the rule to the facts shown to the jury, the court cannot instruct them as requested. From a view of the whole correspondence between the plaintiffs and defendants, consisting of the letters of the dates of January 23d, 1836, Jan. 29th, 1836, Feb. 15th, 1836 and Feb. 22th, 1836, we can see no distinct offer or proposal for a sale or delivery by Messrs. Irwin & Houston *sufficiently definite,* as to quantity, time, or mode of delivery, to enable us to consider the letter of the 22d of Feb. 1836, such a *distinct acceptance* of proposed terms as in law would close the bargain, and make it binding upon both parties as to quantity. The defendants' letter of the 23d of January, 1836, seems to be an answer to a previous letter of inquiry of the 20th of that month, (not produced,) as to the price per ton of *some* supply of iron, and reminding the plaintiffs, that they had not intimated the time at which they wished it delivered, and apprising them that it could not be delivered before the spring freshet. The plaintiffs' letter of the 29th of January, proposes *to take* 100 *tons early in the spring,* and 100 tons between July 1st and October 1st. The price seems

not to have been controverted, nor the mode of payment, but the expense attending the delivery was still a matter of negotiation.

The defendants by their letter of Feb. 15th, 1836, decline that proposition, and inform the plaintiffs that they will have no metal to deliver after the spring freshet, or if no freshet immediately after that season. Therefore it became necessary for the plaintiffs' to say what quantity they would take on spring delivery. They repeated the terms as to price and expense of delivery. An immediate answer *was requested*, so that the defendants should be able to determine what quantity they would have to sell to. other applicants. This letter, I apprehend, does not bear the character of such a distinct, definite proposition, a simple acceptance of which would conclude the parties; but rather an invitation for a new proposition to be made by the plaintiffs, varying the terms as to quantity, mode and time of delivery, which might well have been answered by a proposition to take *one ton* or *five hundred tons*, both of which might have been very inconvenient.

Then the letter of February 22d, 1836, was written, in which the plaintiffs say they will take three ark loads or 150 tons, a new quantity, and comply with the terms proposed. Now it remained to be seen, whether the quantity now for the first time proposed, in the written correspondence, would be agreed to by the defendants. The only quantities spoken of before were 100 tons in the spring and 100 tons in the fall; and now for the first time three ark loads or 150 tons on the spring delivery are introduced.

We therefore inform you, that the letter of H. Y. Slaymaker & Co. of February 22d, 1836, is not such an acceptance of a distinct proposition, as if dispatched with due diligence, completed the contract; and before the defendants could be bound to deliver three ark loads or 150 tons, it must be shown that they have agreed to do so, either by answering the proposition, or evidencing in some other way their acquiescence in the quantity of three ark loads or 150 tons.

This instruction is also in affirmance of the two first propositions submitted on the part of the defendants, that there is no evidence in the cause, that the defendants offered to sell any specific quantity of iron; and till the quantity to be sold was mutually agreed upon between the parties, as well as the terms, there was no contract.

On the third point submitted by the defendants' counsel, the Court answers, that the plaintiffs' letter of February 22d, 1836, was an *offer* or *proposition* different from any which had been before offered in the correspondence, and whether this letter was received by Houston or not, is of little consequence; for even if it had been received by the defendants, it did not bind them to accept it; for it might be inconvenient or impossible to furnish the quantity now proposed for the first time.

The defendants' fourth proposition is affirmed if it be shown to

the jury, that there was any mistake in the plaintiffs in forwarding
or directing the letter of February 22d, 1836, whereby it failed to
reach the defendants ; it makes the case as if no such letter had been
written."

The jury having found for the defendants, the plaintiffs removed the
record to this Court and assigned the following errors :

" 1st. The Court erred in their answer to the second point sub-
mitted by the counsel for the plaintiffs below.

2nd. The Court erred in their answer to the third point submitted
by the counsel for the plaintiffs below.

3d. The Court have not answered the fourth and fifth points sub-
mitted by the counsel for the plaintiffs below.

4th. The Court erred in instructing the jury " that if the article
was scarce, and different iron masters and dealers did not know
where to apply for so large a quantity, as one hundred and fifty
tons, it is reasonable to suppose that the price would be proportion-
ably high ; but certainly it could be procured at some price." And
    1st. Because whether it could have been procured at any price,
        was a question of fact for the jury.
    2nd. Because there was no evidence that it could have been pro-
        cured at some price, and
    3d. Because there was evidence for the consideration of the jury,
        that it could not have been procured at any price.

5. The Court erred in their answer to the first and second points
submitted by the counsel for the defendants below.

6. The Court erred in their answer to the third point submitted
by the counsel for the defendants below.

7. The Court erred in their answer to the fourth point, submitted
by the counsel for the defendants below.

Mr. *Smith,* for the plaintiff in error.
This was a conditional offer by the defendants.   They left it to
us to say how much we would take : 4 *Kent's Comm.* 277, (3d ed.)
The letters taken together make a sufficient contract. If the defend-
ants left it to us to say how much we would take, and we named
one ton or one thousand tons, they could not complain. *Ross on Ven-
dors,* 60.   Where nothing material remains to be done, the contract
is final. *Adams* v. *Lindsay,* (1 *Barn. & Ald.* 681.)   *M° Tier* v. *Frith,*
(6 *Wendell,* 103, 118.)   *Humphreys* v. *Cavallo,* (16 *East,* 44.)
*Eliason* v. *Henshaw,* (4 *Wheaton,* 225.) We were bound by the
letter of the 22d February.   As to damages.   Here the party could
not get the article at all, in the market, therefore the reason of the

rule laid down in the Court below fails. *Lewis* v. *Carridan*, (1 *Yeates*, 37.)

Mr. *Bell* for the defendant in error, argued from the correspondence, that there was no complete or concluded agreement between the parties; and cited, 2 *Kent's Comm.* 477. *Cooke* v. *Oxley*, (3 *Term Rep.* 653.) *Comyn on Contracts*, 78. *Routledge* v. *Grant*, (4 *Bingh.* 653; S. C. 15 *Eng. Com. Law Rep.* 99) *Payne* v. *Cave*, (3 *Term Rep.* 148.) *Frith* v. *Lawrence*, (1 *Paige*, 434.) *Tucker* v. *Woods*, (12 *Johns.* 190.) *M'Cullough* v. *Eagle Ins. Co.* (1 *Picker.* 278.) *Blydenburgh* v. *Welsh*, (1 *Baldwin's Rep.* 331.) 1 *Chitty's Gen. Practice*, 118. *Huddleson* v. *Briscoe*, (11 *Ves.* 583, 591.) *Kennedy* v. *Lee*, (3 *Merivale*, 441, 451.) On the subject of damages, he cited *Shepherd* v. *Hampton*, (3 *Wheaton*, 200.) *Blydenburgh* v. *Welsh*, (1 *Baldwin's Rep.* 331.)

Mr. *Dillingham* on the same side was stopped.

Mr. *Lewis*, in reply.
The main question arising in this cause is, whether the correspondence between the parties amounted to a contract. In the discussion of this question, we can derive but little aid from books. The general principles of law that apply, are undisputed, and the cases cited are all different from the one under consideration, and have but a remote bearing upon it. Although *Cooke* v. *Oxley*, may be deemed apocryphal, and the authority of the *Eagle Insurance Company* v. *M'Cullough*, is more than questionable, they might be admitted as sound law without prejudice to the plaintiffs. If there was a contract between the parties, the letters of the 23d and 29th days of January, and of the 15th and 22nd days of February contain the evidence of it. If there is no contract to be found within the four corners of those letters, it does not exist. The material part of the letter of the 23rd of January, appears to be an answer to an inquiry as to the price of iron. The letter of the 29th of January, contains an offer to take a certain amount of iron, on the terms particularly specified. The answer of the defendants objects to delivering a part of the iron at the time proposed, but agrees to all the other propositions of the plaintiffs, except that which relates to the expense of unloading at Wrightsville. They disagree to the propositions made them, in two particulars only, neither of which relates to the quantity. No difficulty is made about the quantity. They do not object to delivering one hundred tons in the spring, nor even two hundred. As the plaintiffs may not want the whole two hundred tons in the spring, and may be willing to take more than one hundred, they call upon them to " say" how much they will take at that time. This answer being written with a distinct proposition before them, it must be understood as having

reference to that proposition, and as requiring the plaintiffs to deter-
mine how much more than one hundred tons, if more, and how
much less than two hundred tons, if less, they were disposed to take
on the terms mentioned.  Their letter leaves it optional with the
plaintiffs to take what quantity they please within those limits.  All
they are called upon to do, is to " say," and say immediately.  This
they have done by their letter of the 22nd of February.  By that
letter they have exercised the option which the defendants gave
them.  They have determined the quantity by " saying," and all the
other terms of the proposed contract are fully agreed.  Here then
is the *aggregatio mentium* which the law requires.  If a man sells
goods for so much as A. shall name, the contract is complete when
A. names the price, and remains conditional till then.  *Ross on Ven-
dors*, 60.  The truth of this proposition is undeniable.  It is equally
true, that if A. agrees to sell so much of a certain article, as B. shall
name, at a fixed price, the contract is complete when B. names the
quantity.  That is just the present case, with this limitation, that
the quantity named should not exceed two hundred tons, nor be less
than one hundred.  It can make no difference as to the principle, or
as to the binding effect of the agreement, that the plaintiffs were the
persons who were authorized to name.  The uncertainty being
reduced to certainty, in the manner proposed by the defendants
themselves, it does not stand them in hand to object.  The letter of
the fifteenth of February, requires nothing more of the plaintiffs than
to say how much iron they will take on the terms proposed.  They
have answered that requisition, by saying " one hundred and fifty
tons."  Have they not bound themselves by that answer?  Could
they have refused to take the article, had it been tendered, without
a breach of contract?  Could they in the face of their letter of the
22nd, have said *in hæc foedera non veni?*  And can one party be
bound, and not the other?  The contract is closed when the minds
of the parties meet.  *Mactier* v. *Frith*, (6 *Wend.* 103, 113, 119.)
*Brisban* v. *Boyd*, (4 *Paige*, 17.)  And here they have met; for
nothing remained open.  The letter of the 22nd required no answer.
There was no proposition, or offer, or inquiry to be answered.

That it was intended by the defendants, that the plaintiffs should
have their option as to quantity, is evident from the requisition of an
immediate reply, and, particularly, from the reason assigned for
it.  The defendants could not decide till they received the plaintiffs
answer, what quantity they should have to sell to others, from whom
they were receiving orders daily.  What should prevent them from
deciding, unless the determination of the plaintiffs was to bind them
to deliver a certain quantity?  If the defendants were not by their
offer, bound to sell what the plaintiffs would name, it was immate-
rial to them, whether they received an answer.  They would *not*,
in the mean time, be prevented from making other contracts.  The
only reason that can be alleged for requiring an immediate answer,

is, that the decision of the plaintiffs would ascertain the quantity they would have to dispose of to their other customers. The judge below, views the letter of the 15th of February, not as a distinct proposition, but "an invitation to a new proposition, varying the terms as to quantity, mode and time of delivery." This is an inaccurate statement of the contents of that letter. Not a word is said indicating an objection as to quantity, or mode of delivery. The difficulty is, mainly, as to time of delivery, which is to be obviated by the plaintiffs saying how much they will take in the spring. If the letter was, merely; an invitation for a new-proposition, there would be little sense in requiring an early answer. It is objected that the contract is at least doubtful, and authorities have been cited to show that a chancellor will not decree specific performance where that is the case. My answer is, that the position is not sustained, and that the authorities are irrelevant. 1. The contract is not doubtful. It is in writing, and before you, and your business is, to construe it. There may be uncertainty in the minds of the judges as to what the contract is, and difficulty in the ascertainment of it, but there is no uncertainty in the thing itself. When you shall have determined the true construction, you will neither have added to, nor have subtracted from the letters, but only discovered the meaning of the parties when the letters were first written. If the contract were by parol, there might be uncertainty in the evidence, and such uncertainty would operate against the plaintiff, because he is bound to prove his case. But where the contract is in writing, it is enough to exhibit it, and if it has any meaning, the Court must find it out. 2. This is not an action for a specific performance, nor has it any resemblance to one. A bill will not lie for a specific performance of contracts relating to merchandise, and rarely for chattels of any kind. It is only where the party wants the thing *in specie*, and the legal remedy is inadequate, that a court of equity interferes. Even where the contract is of a kind proper to be enforced by a chancellor's decree, but the evidence leaves it too doubtful to authorize him to interfere, the remedy at common law is still open to the suitor. The refusal of the chancellor to decree specific performance, is no reason why the party injured should not obtain damages at law. Here we are pursuing our common law remedy, are entitled to the benefit of the principles of the common law, and are not to be driven off by a strained application of the rules of chancery practice. As to the point relating to damages, it is admitted, that the general rule is, that the amount of damages to be recovered, is to be governed by the price of the article, at the time when it ought to have been delivered, compared with the contract price. This rule has application in every case in which the injured party may go into the market and supply himself with an article of the kind contracted for. But surely this rule is not inflexible. It ceases to operate when the reason of it ceases. The reason of the rule is,

(Slaymaker *v.* Irwin.)

that a party ought to have as much for the breach of a contract, as will put him in the same situation as if the contract had been fulfilled. Where the article is to be had in the market, he can put himself in such a situation, by purchasing at the contract price. But when it is not to be had, he cannot do so. He then may suffer further loss, and if he does, he should be compensated for it. In this case the proof was, that so large a quantity as one hundred and fifty tons was not in the market, when the iron contracted for ought to have been delivered, and that special damage was suffered. The charge of the Court was therefore wrong. *Lewis* v. *Carridan*, (1 *Yeates*, 37.)

The opinion of the Court was delivered by

Sergeant, J.—It is incumbent on a party suing to recover damages for breach of contract, to make out a clear case of some matter or thing mutually assented to, and agreed upon by the parties to the alleged contract. When the agreement is in writing, signed and executed by the parties, their assent to all that is contained in it, is no longer a matter of dispute; the questions which arise in such a case, are of a different character. But when it is epistolary, consisting of a series of letters, containing inquiries, propositions and answers, it is necessary that some point should be attained, at which the distinct proposition of the one party is unqualifiedly acceded to by the other, so that nothing further is wanting on either side, to manifest that *aggregatio mentium*, which constitutes an agreement, and that junction of wills in the same identical matter, offered on one side and concurred in by the other, bringing every thing to a conclusion, which in contemplation of law amounts to a contract. If a proposition be made by one man to another, to purchase an article from him at a certain price and on certain terms, which is accepted as offered, there is then an agreement or contract. But if, instead of accepting it, the party declines so doing, and then new terms of purchase are offered, the assent is yet to be given by the others to the terms thus varied. It is not a contract—it is the suggestion or proposal of a new subject of contract, on which the first party has again a right to pause, to consider, to accept, to reject, to suggest new terms; and all is in the meantime merely negotiation. Mr. Chitty, in his General Practice, in treating of the question, when the contract may be collected from several documents or letters, extracts this rule from the authorities. "The *whole* terms of the contract when in writing need not be expressed on the *same* paper or documents, but may be collected from several letters containing proposals and alternate agreements between the parties; but then the last communication, must be a distinct and unqualified assent, to an equally clear proposal; and if the last letter suggest any new or further proposition, requiring the assent of the other

(Slaymaker *v.* Irwin.)

party, or some communication from him to complete the ·transaction, then no contract or agreement is constituted." 1 *Chitt. Gen. Prac.* 118.

In the case before us, the plaintiff, in a correspondence with the defendant, a manufacturer of iron, said, " I will give you a certain price for one hundred tons, deliverable in the spring, and one hundred tons deliverable in the fall." Had the defendant acceded to this, as offered, there would have been a bargain : but he replied, " I cannot deliver according to your terms; I have iron deliverable only in the spring ;" and then informs the plaintiff it would be necessary for him to say what quantity he would take in the spring. Is this a proposal to deliver to the plaintiff any quantity he might choose to name, from one ton to five thousand tons ? This the plaintiff disclaims, but insists that it authorises him to name any amount not less than one hundred tons, nor more than two hundred tons, and that when he named one hundred and fifty, the contract for that amount was consummated. But no reason appears why the proposition is thus to be regulated. The defendant does not say so. The previous offer was declined, and therefore cannot be considered as continuing so as to be impliedly incorporated into the new one. The last letter of the 22nd of February, did not complete the transaction, it suggested a new proposal, and ·required another communication from the defendant, to produce that effect. It might not suit the defendant to furnish one hundred and fifty tons in the spring, and no one but himself could say that it would. He has not said so—he has left the plaintiff's letter unanswered, and the transaction unfinished. It is not such a bargain as the defendant could insist on the plaintiff's performance of, without showing his own acceptance of it in a reasonable time, and the plaintiffs might have withdrawn it before acceptance.

Judgment affirmed.