# Nazareth Foundry & Machine Co. *v.* Beck, Appellant.

*Statute of frauds—Oral agreement to pay the debt of another—Act of April 26, 1855, P. L. 308.*

Where a father orally agrees to be responsible for the payments for repairs to a part of an automobile owned by his son and in the hands of a machine company at the time for repairs, and such repairs are done for the son, charged to him and paid by him, and subsequently other repairs are done for the son and paid for by him, without any further undertaking by the father, the latter cannot be held responsible on his original promise, for a third job of repairs ordered by the son, but not paid by him.

Argued Dec. 6, 1916. Appeal, No. 218, Oct. T., 1916, by defendant, from judgment of C. P. Northampton Co., Dec. T., 1915, No. 44, on verdict for plaintiff in case of Nazareth Foundry & Machine Co. v. Granville Beck. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for repairs to an automobile owned by defendant's son. Before McKEEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $47.29. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

C. F. Smith, of Smith, Paff & Laub, for appellant.— The case was within the statute: Nugent v. Wolfe, 111 Pa. 471; Maule v. Bucknell, 50 Pa. 39; Shoemaker v. King, 40 Pa. 107; Eshleman v. Harnish, 76 Pa. 97; Haverly v. Mercur, 78 Pa. 257.

*W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellee.—The court could not properly have held as a matter of law that the defendant's promise was collateral, and not original: Jefferson County v. Slagle, 66 Pa. 202; Kaufman v. Abeles, 11 Pa. Superior Ct. 616; Warnick v. Grosholz, 3 Grant 234; Boston v. Farr, 148 Pa. 220; Holmes v. Fitzpatrick, 173 Pa. 366; Merriman v. McManus, 102 Pa. 102; Fairlamb v. Hempshire, 7 W. N. C. 92; Weyand v. Crichfield, 3 Grant 113; Warnick v. Grosholz, 3 Grant 234.

OPINION BY HENDERSON, J., March 16, 1917:

The plaintiff's action arises on an alleged parol agreement of the defendant to pay a bill held by the plaintiff against the defendant's son, Jacob. The account is for work and material furnished to the son in the repair of an automobile which the latter requested the plaintiff to supply. The plaintiff's manager gives the following account of the transaction: "Q. What was the conversation you had with him? A. I told Mr. Beck that his son, Jacob, had some work to be done on his automobile; if it would be satisfactory for us to do that work. He said it would. And I said 'How about the payment of the bill?' He said he would be responsible for the payment of the bill. Q. Do you remember the date of that conversation? A. I can't give the exact date. Our order was dated the 13th of April, and it was a day or two ahead of that. Q. Now, previous to that time, had Mr. Jacob Beck ordered any work done on an automobile? A. Yes; he brought the work for the foundry to do. Q. Did you do the work Mr. Jacob Beck ordered? A. After I spoke to his father, then we did the work. Q. What did that work consist of? A. Well, it was repair parts for the automobile, different parts we fixed up and some new parts. I can give you the exact detail, if you want me to, from the bill book. The first bill was dated April 30, 1915." The bill then contracted was charged to Jacob Beck and paid by him on May 10,

1915. A second bill was contracted by him which was charged to and paid by him July 14, 1915. After that a third account for work and material ordered by Jacob Beck was charged to him. This latter account is the basis of the pending action. The first items in the account were charged August 31, 1915. The last item bears date September 3, 1915. It thus appears that the work which Jacob Beck asked the plaintiff to do for him immediately before the conversation of the manager with the defendant was that included in the first account for which he settled on May 10, 1915. The other accounts were contracted at later dates and were all entered as charges against Jacob Beck. It was not alleged that there was any other undertaking of the defendant than that given in the testimony above recited. The witness, Mr. Frey, admits that in a letter dated November 3, 1915, addressed to the defendant and calling his attention to the work done for his son, for which the last account was rendered, the following language was used: "As the work was done for him on the representation by you that you would see that the bills were paid we would ask you to kindly have him send us check at once or send us your own check for the same." And on cross-examination he gave the following evidence: "Q. Now, which did he say, 'I will see the bills are paid,' or 'I will be responsible?' A. As near as I can recollect, he said, 'I will be responsible for the payment of the bill.' ´ Q. And so the letter which you wrote in November, 1915, that was incorrect? A. No; I won't say that is incorrect, either; I wrote that letter. Q. Well, is what he said what you put in this letter? A. That, I can't recall. Q. Why did you put it in this letter to Mr. Beck? A. Doesn't it mean the same thing? Q. I am not asking you that; that will be for the court. Now, is this what Mr. Beck said, what you stated in here? A. I can't recall that." Later in his testimony he said in reply to a question of the court: "My recollection is he said he was responsible for the bill." It will thus be seen that the witness was not clear

as to the exact language used.  His testimony shows
that he regarded the expression quoted from the letter
as of the same import as that which he testified was the
promise of the defendant when the arrangement was
made about the work first done.   The plaintiff's conten-
tion is that under the promise of the defendant made to
the manager of the company it was authorized to do
whatever work on the automobile Jacob Beck might
order and that the defendant would be responsible there-
for until he notified the plaintiff that he would no longer
be liable.   Assuming the promise of the defendant to be
that stated by the plaintiff's witness there is this diffi-
culty in the way of a recovery: None of the evidence
discloses any intention on the part of the defendant to
bind himself generally for debts which might be con-
tracted by his son.   The subject of conversation between
him and Mr. Frey in April was the repair of some auto-
mobile parts which his son had brought to the defend-
ant's shop and it was that work to which the promise
applied if made as claimed by the plaintiff.   There is
nothing in the testimony to show that either the plaintiff
or the defendant's agent in their conversation in April
anticipated the contracting of a debt in August for work
then done for Jacob Beck.   At the time the promise was
made in April the parts of the automobile to be worked
on were in the plaintiff's shop and it was this proposed
work which the plaintiff's manager had in mind when he
conferred with the defendant as to payment.   Now, the
bill then contracted was paid by Jacob on May 10, 1915,
as has already been noticed and a second bill was paid
July 14th, of the same year.   These payments closed the
undertaking of Jacob Beck and of course any contin-
gent or original liability of the defendant with reference
thereto.   It is conceded that the work for which the ac-
tion is brought had not been ordered at the time the
promise was made.   The learned trial judge recognizing
the difficulty in the case submitted to the jury the ques-
tion whether the promise made in April covered another

bill ordered in August by Jacob Beck. In so doing an error was committed for the language of the promise in the circumstances of the case is not sufficiently broad to establish that liability. The evidence clearly shows that the subject of conversation in April (and that was the only conversation in which it is said a promise was made), related to work which had already been ordered by the defendant's son. The plaintiff's witness in speaking of it said "Our order was dated the 13th of April" and it was a day or two ahead of that that the conversation took place. He (Jacob) brought the work for the foundry to do and it was only after the manager spoke to the father that the work was done. The witness then proceeded to describe the work which included all of the first bill rendered to Jacob Beck and which he soon thereafter paid. It is a rule of evidence that where a plaintiff seeks to make one man liable for the debt of another the case must be plainly made out. Every ambiguity in the evidence weighs in favor of the defendant. It is the duty of every one who contracts with a man on the credit of another not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation to be assumed. The evidence must be clear and satisfactory to prove the promise of the defendant to pay such a debt as a new and original undertaking: Tucker v. Bitting, 32 Pa. 428; Haverly v. Mercur, 78 Pa. 257; Russell v. Clark, 7 Cranch 69. Tested by this standard the plaintiff's case is deficient. There was a lack of evidence on which the jury could properly have found a liability for the debt sued for.

Further objection to the action is found in the fact that the work done and material furnished was done and furnished to Jacob Beck. A quotation from the evidence of the plaintiff's manager shows the understanding which he had of the transaction: "Q. Are these the items that make up that $44.62? A. Yes, sir. Q. When you say on here, 'Sold to Jacob Beck, August 31, 1915,

$41.22,' do you mean to say now that you didn't sell to him, that you sold to Granville Beck? A. No; it was sold to Jacob Beck; he got it. Q. You say that the $41.22 all these items making up Exhibit No. 9, were sold to Jacob Beck? A. Yes, sir; sold to Jacob Beck." The evidence leaves no doubt in our minds that the undertaking of the defendant was regarded by the plaintiff as a collateral undertaking. The material was furnished to Jacob Beck; it was charged to him; the bills were sent to him and collections made from him. It was only when he failed to pay the account last contracted that the plaintiff proceeded against the defendant and in that case the promise set up was a parol agreement to pay the debt or answer for the default of another, and under the Act of 1855, should have been in writing. Where the leading object of the promise is to become guarantor or surety for a debt for which a third party continues to be primarily liable the agreement whether made before or after or at the time of the promise is within the statute and of no effect unless in writing: Nugent v. Wolfe, 111 Pa. 471; Gable v. Graybill, 1 Pa. Superior Ct. 29. The question whether the promise was made as alleged is a question of fact for the jury. Whether the promise is sufficient to support the action is a question of law for the court. The defendant was therefore entitled to an affirmance of the request for binding instructions in his favor.

The first assignment is sustained and the judgment reversed.