## Allen et al. *v.* Kirwan et al., Appellants.

[Marked to be reported.]

*Contracts—Acceptance of offer.*

Defendants wrote plaintiffs: We have a few jars that we can offer you at this time for immediate acceptance, stating the prices. Plaintiffs immediately wired: " Enter order for five hundred gross." This order was not formally accepted. Subsequently in reply to request for information defendants wrote plaintiffs that they had only two hundred and fifty gross and they would forward these. Plaintiffs insisted upon the delivery of five hundred gross. *Held*, in an action for breach of contract to deliver five hundred gross, that there was no contract between the parties for the delivery of that number of jars and that plaintiffs were not entitled to recover.

Argued Jan. 18, 1894.　Appeal, No. 72, Jan. T., 1894, by plaintiffs, E. F. Kirwan et al., trading as Kirwan & Tyler, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1891, No. 11, on verdict for plaintiff, R. J. Allen Son & Co.　Before STER-RETT, C. J., GREEN, McCOLLUM, MITCHELL, and FELL, JJ.

Assumpsit begun by foreign attachment.　Rule to dissolve attachment.　Before BRÉGY, J.

The facts appear by the opinion of the Supreme Court.

Binding instructions were given for plaintiffs, and refused for defendants. [2, 3]

Verdict and judgment for plaintiff.　Rule discharged.

*Errors assigned* were (1) discharge of rule; (2, 3) instructions, quoting them.

*William M. Stewart, Jr.*, and *John G. Johnson*, for appellants, cited: Vienne v. McCarty, 1 Dal. 154; Mollet v. Fonsera, 4 S. & R. 543; Graham v. R. R., 26 W. N. 203; Lawson on Contracts, § 10; 7 A. & E. Ency. 957; Butts v. Town of Stowe, 53 Vt. 600; Kerby v. England, 2 C. & P. 300; Myers v. Gross, 59 Ill. 436; Grove v. Hodges, 55 Pa. 504; Slaymaker v. Irwin, 4 Whart. 369; Hare on Contracts, 344; Moulton v. Kershaw, 59 Wis. 316; Beaupre v. Tel. Co., 21 Minn. 155; Ashcroft v. Butterworth, 136 Mass. 511; Ahern v. Ayers, 38 Mich. 692.

*James H. Shakespeare*, for appellee.—This case belongs to a class of cases where the fixing of the quantity or amount of the article offered for sale is left to the purchaser or the person to whom the offer is made: Moulton v. Kershaw, 59 Wis. on page 321.　There was every element of mutuality.　Appellants had made a special and particular offer to a particular person, and appellees were bound.　This distinguishes appellants' cases. It was a question for the jury only whether the quantity named by appellees was, under the circumstances, a reasonable amount to order: Myers v. Gross, 59 Ill. 436.　In Slaymaker v. Irwin, 4 Whart. 369, the acceptance of the offer was in the alternative.

OPINION BY MR. JUSTICE GREEN, February 12, 1894:

The learned judge of the court below gave a binding instruction to the jury to find a verdict for the plaintiffs for the

full amount of their claim. If the various telegrams and letters given in evidence constituted a binding contract between the parties, there would probably have been no material error in the instruction, as there was no other defence made than that there was no contract for five hundred gross of jars as claimed by the plaintiff. This brings us directly to the question whether any actual contract was established by the telegrams and letters.

The first communication that passed between the parties was a letter from the defendants to the plaintiffs, dated Baltimore, June 12, 1891, in the following words:

" Gentlemen: We wired you the other day regard to caps, and we hoped to have heard from you with order. We have a few jars that we can offer you at this time for immediate acceptance at $8.00 for 1 qts., $11.00 for 2 qts. complete, delivered at Philadelphia. Terms sixty days or less two per cent for cash in ten days. Caps same price as before quoted. Awaiting your orders we are     " Yours truly,

                                      " KIRWAN & TYLER."

To this letter plaintiffs replied next day by telegram as follows: " Philadelphia, June 13, 1891. Kirwan & Tyler: Letter 12th instant just received. Enter order for five hundred gross complete goods; also will you give privilege of duplicating same not later than middle of next week? R. J. Allen Son & Co."

On June 15th, the plaintiffs, having received no answer to their telegram of 13th, telegraphed again to defendants as follows: " Philadelphia, June 15, 1891. Kirwan & Tyler, Baltimore: Are awaiting answer to that portion of our telegram of 13th instant wherein we ask if you would give us the privilege of duplicating the order now with you, up to the middle of this week. R. J. Allen Son & Co."

On the same day the defendants telegraphed the plaintiffs as follows: " R. J. Allen Son & Co., Philadelphia: We can only enter order for 250 gross. Will advise as to balance by wire Wednesday."

Also on the same day the defendants wrote the plaintiffs as follows:

                          " Baltimore, Md., June 15, 1891.
" Messrs. R. Allen Son & Co., Philadelphia, Pa.:

" Your telegram at hand, and in reply we wired you that we

had only two hundred and fifty (250) gross of caps that we could enter your order for definitely at this time, but will wire you Wednesday morning if we have any more to spare. We are now dickering for another lot, and if we can get them we will be pleased to give you the entire quantity. Please send us shipping instructions for the two hundred and fifty (250) gross.                    Yours truly,

"KIRWAN & TYLER."

On the same 15th of June, the plaintiffs wrote the defendants, on receipt of their telegram, as follows : " Kirwan & Tyler, Baltimore, Md. : Telegram just received this afternoon. We undoubtedly expect the 500 gross as ordered, we having ordered promptly upon receipt of your order and in accordance therewith. As for option, we will await your advices until Wednesday by wire, as per telegram received. Please advise us where the goods are to be received. Yours truly, R. J. Allen Son & Co."

To this letter the defendants answered the next day by letter as follows :

"Baltimore, Md., June 16, 1891.

"Messrs. R. J. Allen Son & Co., Philadelphia, Pa.

"Gentlemen: Your favor of the 15th at hand. In reply would say that if you will refer to our letter, we wrote you that we only had a small quantity bodies to spare, we have not at this time five hundred gross. As we wrote you last night, if we are able to secure the balance of the bodies we will wire you in the morning and hope to be able to supply you.

"Yours truly,

"KIRWAN & TYLER."

On the same 16th day of June the plaintiffs wrote the defendants as follows :

"Philadelphia, 6th Mo. 16th, 1891.

"Kirwan & Tyler, Baltimore, Md.

"Gentlemen: Yours of the 15th inst. received this morning. You spoke of our order as being only for caps, but it is for complete goods, and would refer you to our telegram of June 13th. We wrote you yesterday that we expected undoubted the 500 gross of completed goods as ordered, and that we await your advice to-morrow, Wednesday morning, respecting the option we asked for of 500 gross additional. In our letter of

yesterday we asked you where the goods are, which please answer, and when hearing from you we can then answer your question as for shipping instructions as stated in last sentence of yours of 15th inst.        Yours truly,

"R. J. ALLEN SON & CO."

To this letter the defendants wrote the following reply:

"Baltimore, Md., June 17, 1891.

"Messrs. R. J. Allen Son & Co., Philadelphia, Pa.

"Gentlemen: Your favor of the 16th at hand. As we wrote you on the 15th, we cannot furnish but two hundred and fifty (250) gross of complete jars. These jars are now stored in Jersey, and we can ship them whenever it suits you. We have been unable to get any further jars as yet, and unless we do we cannot of course furnish the other two hundred and fifty (250) gross. We are still trying however, and as soon as we have any more to offer will advise. Yours truly,

"KIRWAN & TYLER."

On the 18th June the defendants also wrote the plaintiffs the following letter:

"Baltimore, Md., June 18, 1891.

"Messrs. R. J. Allen Son & Co., Philadelphia, Pa.

"Gentlemen: Your favor of the 17th is at hand. We do not see how we can deliver anything we do not possess. We only have the two hundred and fifty gross and these we will give you at anytime, and will do our best to secure the other two hundred and fifty gross if we are able to do so, will gladly let you have them. Trusting this explanation may be satisfactory we are        Yours truly,

"KIRWAN & TYLER."

The contention of the plaintiffs in this action of foreign attachment brought by Allen Son & Co. is that a binding contract was made by which the defendants, Kirwan & Tyler, were bound to deliver 500 gross of jars to them, in consequence of their telegram of June 13th to Kirwan & Tyler to enter order for 500 gross. There was no telegram or letter from Kirwan & Tyler by which they ever agreed to sell that many gross, and unless a legal obligation, on their part, to sell that many arises out of their letter of June 12th, and the plaintiffs' telegram of June 13th, the plaintiffs have no case. In their letter of the 12th the defendants say they have a few jars which they can

offer for immediate acceptance at the prices named.   To this
plaintiffs reply by telegram· "Enter order for five hundred
gross."   Of this order there was no acceptance.   Does such an
offer, followed by such an order, unaccepted, obligate the de-
fendants to deliver the whole quantity ordered?   The state-
ment of this question seems to furnish its own answer.   As
long as the order was unaccepted there was no agreement to
deliver 500 gross.   The offer was to sell *a few* gross.   Such an
offer was of an indefinite quantity.   It gave the plaintiffs a
right to name a quantity, and if the quantity named was ac-
cepted by the defendants they would be bound to deliver that
quantity.   But if the quantity named was unaccepted, how
could the defendants be legally bound to deliver the quantity
named?   At what point of time, and in what words, did plain-
tiffs ever agree to deliver 500 gross?   Not by anything occur-
ring after the order, because all of the telegrams and letters of
the defendants, after their original letter of June 12th, were a
continual and constantly repeated assertion of their inability to
deliver that quantity because they did not have them and could
not get them.   Not by the original letter of June 12th, because
in that they did not offer to sell any definite quantity.   By
consequence, in order that they should become legally bound
for any definite quantity, no matter whether large or small,
their assent to that particular quantity must be obtained.   They
said they had a few jars to sell.   What does that mean?   It is
very clear it does not mean fifty jars, or one hundred, or one
thousand, or any other particular number.   It is impossible to
understand how it can certainly and definitely mean the par-
ticular number 72,000 jars.   The plaintiffs' contention is that it
does have such legal meaning because they indicated that num-
ber in their order, and that this alone bound the defendants to
that number.   They say "a few" authorized them to fix 72,000.
But the answer is "a few" does not authorize the plaintiffs to
bind defendants to any definite number without their consent,
and until such consent is obtained the defendants are not bound.

Not a solitary authority or text writer's opinion is offered by
the plaintiffs in support of their contention, nor is it believed
any such can be found.   On the contrary, a number of cases
quite analogous in the character of the questions raised are
cited by the defendants, and seem to control the determination

of the subject. Thus in the case of Moulton v. Kershaw, 59 Wis. 316, the defendants wrote to the plaintiffs as follows: " In consequence of a rupture in the salt trade we are authorized to offer Michigan fine salt in full cargo lots of eighty to ninety-five barrels, delivered in your city at 85 cents per barrel to be shipped per C. & N. R. Co. only. At this price it is a bargain as the price in general remains unchanged. Should be pleased to receive your order." To this the plaintiff replied by telegraph the next day : " Your letter of yesterday received and noted. You may ship me 2000 barrels Michigan fine salt as offered in your letter. Answer." The plaintiff sued for failure to deliver and filed a statement of claim, setting out the letter and telegram, and also alleging that he was accustomed to buy salt in large quantities, and that 2000 barrels was a reasonable quantity for him to order, which the defendants might reasonably expect him to order from their knowledge of his business. To this statement the defendant demurred and the demurrer was sustained on the ground that the letter and statement did not make out a contract. This case is very closely in point with the present.

We think the case of Slaymaker v. Irwin, 4 Whart. 369, is ruled upon a principle sufficiently analogous to give it force in the present contention. There Slaymaker wrote to Irwin: " We will take one hundred tons of Washington pig metal the same quality as that received last year from you at thirty dollars per ton, delivered at Wrightsville as early in the spring as the navigation of the river will admit of; and the further quantity of one hundred tons at any time between the first of July and the first of October." To this Irwin & Huston replied in a few days : " We will have no metal to deliver after the spring freshet, or in case of no freshet in the river, in the canal immediately after. Therefore it will be necessary for you to say what quantity you will take on spring delivery. Our terms are thirty dollars per ton if delivered in arks at Wrightsville. An immediate answer is requested as we are receiving orders daily, and are unable to decide the quantity we may have to sell." In answer to this Slaymaker wrote : " Your favor of 15th inst. was duly received ; from which we learn that you will not have any metal for sale after the spring delivery and in which you inquire what quantity we will take

at that time; in reply to which we say we will take three arks if delivered in that way, which we would really prefer, or one hundred and fifty tons if delivered by the canal. The terms proposed we will comply with." To this no answer was given and Slaymaker brought suit to recover damages for the non-delivery of 150 tons. Here was a request for a definite order, such an order was given in either of the alternatives suggested by Slaymaker, but this court held the contract was not complete without a further reply from him. Mr. Justice SERGEANT, delivering the opinion, said: " The last letter of February 22d did not complete the transaction. It suggested a new proposal and required another communication from the defendant to produce that effect. It might not suit the defendant to furnish one hundred and fifty tons in the spring, and no one but himself could say that it would. He has not said so; he has left the plaintiff's letter unanswered and the transaction unfinished." So in this case, it might not suit the defendants to furnish 500 gross of jars, and no one but they could say that it would. But the case is stronger than Slaymaker v. Irwin because the defendants did answer the order for 500 gross by saying they could not send them because they did not have them. They made immediate and persistent attempts to get them but could not succeed. And the case is still much stronger than any of the other cases because the defendants did agree to furnish 250 gross, which was all they had or could obtain, and the plaintiffs accepted that number. They certainly had no legal right to insist upon more when the defendants had no more and so informed the plaintiffs, and had never agreed in any manner whatever to give them more. It would be a perversion of justice to hold that they were legally bound to do what they had never agreed to do, and what they told the plaintiffs at once they could not do. And especially is this so in view of the fact that they made earnest efforts to get the additional 250 gross in the market so as to accommodate the plaintiffs in their desire, and only failed to do so because they could not be had.

Other cases having more or less analogy are cited for the appellants, viz.: Beaupré v. Telegraph Co., 21 Minn. 155; Ashcroft v. Butterworth, 136 Mass. 511; Ahern v. Ayers, 38 Mich. 692; but it is unnecessary to review them, as the ques-

tion is too simple and easy of solution upon the. plainest principles.   We are clearly of opinion that no contract for the delivery of 500 gross of jars was ever made between these parties, and therefore the jury should have been instructed to render a verdict for the defendants.   The assignments of error are all sustained.

Judgment reversed.