# Dougherty, Appellant, *v.* Briggs.

*Contracts—Offer and acceptance—Parol contract—Written correspondence—Acts and conduct of parties.*

1. Where the written correspondence between the parties to a contract discloses on its face that it does not constitute the whole agreement, and the terms thereof must be ascertained from the letters and acts of the parties, the contract is for the jury, including the question whether an offer contained in one of the letters of the defendant was accepted by the conduct or acts of the plaintiff.

2. When it is sought to establish a contract by letters which pass between the parties, containing proposals, answers and counterproposals, it must be made to appear that at some point in the correspondence there was a definite and unqualified proposal by one party which was unconditionally and without qualification accepted by the other party.

Argued Jan. 18, 1911. Appeal, No. 334, Jan. T., 1910, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1909, No. 893, for defendants non obstante veredicto in case of Frank P. Dougherty v. Malcolm Briggs, Jr., and The Tradesmen's Trust Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Assumpsit for money had and received. Before KINSEY, J.

At the trial it appeared that Dougherty was awarded in the spring of 1906 a contract for all the plumbing work in an operation of fifty houses about to be erected by one Bihlmaier. The contract was signed June 6, 1906, and provided for the payment of $8,950, $6,350 as the work progressed, the balance in three notes, two of $1,000 each and one of $600. Dougherty gave to Bihlmaier a bond for the faithful performance of his contract, and Bihlmaier assigned this bond to the Tradesmen's Trust Company. Bihlmaier agreed "to have set aside in escrow with the Tradesmen's Trust Company" five designated houses in

the operation, "to be held by the said Tradesmen's Trust Company as security for the payment of the above mentioned three promissory notes of the said Bihlmaier, and the said Frank P. Dougherty agrees to release said five houses and lots as said notes are paid." Five counterparts of the agreement between Dougherty and Bihlmaier were executed, one of which was deposited with the trust company, and the attention of the company was called to the provision as to the five houses. Briggs, the title officer of the company, saw the agreement, and Taylor, the employee of the company in charge of building operations, read it before the settlement in August, 1906. At that time the land was conveyed by its old owner to a "straw man," who conveyed the land, divided into fifty lots, subject to first mortgages, to Bihlmaier. These mortgages were for money to be advanced for the building operation, and were assigned to various investors, who deposited their money with the trust company, to be disbursed by it as the work progressed; and the company issued to the mortgagees title policies and policies of indemnity against noncompletion, mechanics' and municipal liens. Bihlmaier conveyed all the lots to Briggs, the title officer of the trust company, and one of the defendants in the present action, who took and held the title for the company, to secure the company in the payment of all moneys advanced by it to complete the houses. These conveyances included the five lots designated as security for the deferred payments to Dougherty. It is not denied that Briggs took title subject to Dougherty's rights in the five lots and the houses to be erected thereon, or that the company's rights in the five houses and lots were thus inferior to Dougherty's, unless made superior by the subsequent transactions. The company also took from Bihlmaier a bond with one Sutton as surety for completion of the houses free of liens, and from each subcontractor a bond similar to the one given by Dougherty to Bihlmaier and by him assigned to the company.

On August 4, 1906, one of the counterparts of plaintiff's

contract with Bihlmaier was filed of record by the trust company. Plaintiff started work at the end of August, 1906. He received $3,300 from Bihlmaier as the work progressed, and $2,900 from the trust company, as set forth below, but never received any part of the $2,600, deferred payments. Bihlmaier gave him one note for $1,000 and a renewal thereof, which was never paid, and refused to give the other two notes. In the fall of 1907, Bihlmaier fell behind in his payments, and the work began to drag, but plaintiff never stopped work, being under bond for its completion. In November, 1907, the company took charge of the operation. Having done a large part of the work, and having received only $3,300, the plaintiff asked the trust company for some assurance as to payment of the balance of the cash which was then due, namely, $1,150, and of the balance which would become due as the work progressed, namely, $1,900, or $3,050 in all. The deferred payments of $2,600 were secured by the "equity" in the five houses. Finding that, out of cash in hand, it could pay plaintiff $2,900, the company offered to pay plaintiff that sum, as the work progressed, if he would complete his work. On this subject there were numerous conversations between plaintiff and his counsel, Mr. Wood, and Mr. Brooks, the treasurer of the company, and some correspondence. Plaintiff completed the work in January, 1908, and received $2,900 from the company in installments as the work progressed. In June, 1908, thirty-five houses of the operation were sold, including the five houses held as security for the deferred payments to plaintiff, realizing from $15,000 to $23,000 above the first mortgages, and Briggs conveyed to the purchaser, received the proceeds, and turned them over to the company. This action was brought to recover $2,600 of this fund.

Under date of November 26, 1907, Charles S. Wood, as attorney for Dougherty, the plaintiff, wrote to the Tradesmen's Trust Company the following letter: "Upon behalf of Mr. Frank P. Dougherty, who contracted with Fred-

erick A. Bihlmaier to do the plumbing work in thirty-three houses on the east side of Conestoga Street between Arch and Race Streets, and seventeen houses on the west side of Conestoga Street, north of Arch Street, and upon which said contract the said Bihlmaier has defaulted, leaving the work in thirty-three of said houses incomplete and unfinished, I desire to make the following proposition to your company, respecting the completion of the said contract: Mr. Dougherty will furnish all of the materials, and perform all of the labor necessary, to complete his contract in strict and exact accordance with the specifications for said work, attached to and made a part of his said contract with the said Bihlmaier, for the sum of $2,900 upon the acceptance by your company of said proposition, and the writing of a letter, agreeing, upon behalf of said company, that it will guarantee the payment of the said sum of $2,900, as the same may become due and payable in accordance with said contract, and that your company will after it has saved itself from loss or damage by reason of said Bihlmaier's default, subrogate Mr. Dougherty as his interest may appear to your rights to proceed against the bondsman of the said Bihlmaier for damages arising out of the said default. Kindly let me hear from you at your earliest convenience and oblige."

Under the same date Lewis K. Brooks, treasurer of the Tradesmen's Trust Company, replied to Mr. Wood as follows: "I am in receipt of your communication of the 26th inst., relative to the completion of the plumbing work, by your client, Frank P. Dougherty, on the Bihlmaier operation, situate Arch and Conestoga Streets, and in reply beg to state that the Tradesmen's Trust Company will pay Mr. Dougherty the sum of $2,900 cash for the completion of this work according to the specifications of the original contract of Mr. Dougherty with Mr. Bihlmaier, it being understood that Mr. Dougherty will prosecute this work to completion with all possible haste. In reference to the last clause of your letter, in which you ask that Mr. Dougherty be subrogated to the rights of the

Tradesmen's Trust Company to proceed against Mr. Sutton, the bondsman on this operation, I wish to state that the Tradesmen's Trust Company will not consent to such arrangement. All that they will agree to do is to pay Mr. Dougherty $2,900 for the finishing of his contract, and retain any moneys that may arise from the sale of the properties and applicable to Mr. Bihlmaier's account, over and above the indebtedness due the Tradesmen's Trust Company, to be prorated among the various subcontractors in proportion to the amount of claims still due them. If this arrangement is satisfactory, kindly push Mr. Dougherty to complete his work immediately."

The next letter passing between the parties is under date of December 11, 1907, in which Mr. Wood wrote to Mr. Brooks as follows: "I am under the impression that no acknowledgment was sent you of the receipt of your letter of November 26th, relative to Frank P. Dougherty, and the Bihlmaier operation, in which communication you agreed to allow Mr. Dougherty $2,900 to finish his work, but refuse to subrogate Mr. Dougherty to your rights against the contractor's surety. At this time, I simply beg to advise you that I have instructed Mr. Dougherty to complete his work, in accordance with the terms of the agreement entered into between us, but, notwithstanding the terms of your letter of November 26th, I desire to state that Mr. Dougherty will use all legal means in his power to secure for himself his full rights against Mr. Bihlmaier, the Tradesmen's Trust Company and Mr. Sutton, the surety. I further desire to state, that, upon behalf of Mr. Dougherty, we will endeavor to hold the Tradesmen's Trust Company to a strict accountability in the matter of the disposition of the houses, and I would suggest that they shall not be sold for any sum which will not net an amount sufficient to pay, inter alia, my client. I am also advised, that, notwithstanding the agreement made with myself, as attorney for Mr. Dougherty, the Tradesmen's Trust Company has made an agreement not only to pay Mr. Laning in full for the completion of his work, but, in

addition thereto, have guaranteed that he shall receive the equities to which he is entitled, under his original contract with Bihlmaier.   I can hardly believe that the Tradesmen's Trust Company would enter into a contract of this kind, but nevertheless, I would be glad to learn from you personally, whether such is the case.   Thanking you for an early reply, I beg to remain," etc.

Mr. Brooks replied to this letter under date of December 20, 1907, as follows: "I am in receipt of your communication of the 11th inst., relative to Mr. Dougherty's contract in the Bihlmaier operation, and in reference to the last clause of your letter I wish to say that the statement made by you is entirely untrue.   Mr. Laning, in the finishing of his contract, has no further arrangements made with him than were made with your client for the finishing of his contract."

Verdict for plaintiff for $2,000.   Subsequently the court entered judgment for defendants non obstante veredicto.

*Error assigned* was in entering judgment for defendants n. o. v.

*Stanley Folz,* with him *Leon H. Folz,* for appellant.— Under the Act of April 22, 1905, P. L. 286, the court may not enter judgment non obstante veredicto unless binding instructions at the trial would have been proper.   The court may not after verdict decide questions which should have been submitted to the jury: Dalmas v. Kemble, 215 Pa. 410; Bond v. Penna. R. R. Co., 218 Pa. 34.

In construing writings all the surrounding circumstances are to be borne in mind, the situation of the parties, etc.: Wilson v. Wernwag, 217 Pa. 82; Perry v. Payne, 217 Pa. 252.

Acceptance must be unconditional and identical with the terms of the offer: Slaymaker v. Irwin, 4 Whart. 369; Allen v. Kirwan, 159 Pa. 612; Clements v. Bolster, 6 Pa. Superior Ct. 411; Swing v. Walker, 27 Pa. Superior Ct. 366; Smith v. Perry, 32 Pa. Superior Ct. 421.

Where there are writings between the parties in the course of which no acceptance of an offer is contained, whether or not the offeree's conduct amounts to an acceptance is a question for the jury and not for the court: McClure v. Times Publishing Co., 169 Pa. 213; Snyder v. Leibengood, 4 Pa. 305.

*Henry J. Scott,* for appellees.—There was no issue of fact for a jury to pass upon: Webb v. Mears, 45 Pa. 222; Folsom v. Cook, 115 Pa. 539; Middleton v. Stone, 111 Pa. 589; Bryant v. Hagerty, 87 Pa. 256; Ulrich v. Getz, 9 Pa. Superior Ct. 289.

OPINION BY MR. JUSTICE MESTREZAT, March 20, 1911:

This is an action of assumpsit for money had and received by the defendants for the use of the plaintiff, and the right to recover depends on whether the plaintiff released his "equity" in the five houses created by the agreement entered into between him and Bihlmaier in June, 1906. The question was submitted to the jury and there was a finding in favor of the plaintiff and a verdict for the amount of his claim less certain carrying charges. The court, however, entered judgment for defendants non obstante veredicto under the act of 1905 on the ground that certain language in the letter of November 26, 1907, of Mr. Brooks, the treasurer of the trust company, to plaintiff's counsel "was a distinct offer that was accepted by Dougherty doing the work and taking the money. This acceptance is fatal to his present claim." The plaintiff has appealed, and assigns for error the action of the court in entering judgment for the defendants.

We cannot agree with the learned court's conclusion in holding that the letters constituted the contract between the plaintiff and the defendants. We think the agreement was partly in writing and partly in parol, and that all the evidence should have been submitted to the jury to determine the contract between the parties. This having been done and the jury having found in favor of the plaintiff, judgment should have been entered on the verdict.

The burden was on the defendants to show that the plaintiff had released or waived his claim on the five houses in which he was given an "equity" by the contract between him and Bihlmaier. They attempted to meet the burden by the letters which passed between the parties in the latter part of 1907. The first two letters, under date of November 26, 1907, cannot be construed to be a contract of any kind. Mr. Wood's letter was a proposal that his client would complete the work for $2,900 upon the acceptance of the proposition and the writing of a letter agreeing to subrogate Dougherty to defendants' rights to proceed against Bihlmaier's bondsman for damages arising out of his default on the building contract. Mr. Brooks, in his reply of the same date, did not accept the proposition in its entirety and thereby create a contract between the parties. He agreed to pay Dougherty $2,900 for the completion of the work, but refused to subrogate him to the rights of the trust company to proceed against Bihlmaier's bondsman. The letter then proceeds: "All that they will agree to do is to pay Mr. Dougherty $2,900 for the finishing of his contract, and retain any moneys that may arise from the sale of the properties and applicable to Mr. Bihlmaier's account, over and above the indebtedness due the Tradesmen's Trust Company, to be prorated among the various subcontractors in proportion to the amount of claims still due them." It will be observed that Mr. Wood's letter is a proposal to complete the work on certain specific terms. Mr. Brooks accepts some and rejects others of those terms, and submits additional terms. It is apparent, we think, that the proposals and counterproposals in these letters did not create a contract. When it is sought to establish a contract by letters which pass between the parties, containing proposals, answers and counterproposals, it must be made to appear that at some point in the correspondence there was a definite and unqualified proposal by one party which was unconditionally and without qualification accepted by the other party. In other words, the minds of the parties

must come together on all the essential terms of the alleged contract. This is the established doctrine, and is recognized in our cases: Slaymaker v. Irwin, 4 Whart. 369; Allen v. Kirwan, 159 Pa. 612. In the former case Mr. Justice SERGEANT, delivering the opinion, quotes with approval the rule announced by Mr. Chitty in his General Practice as follows (p. 380): "The whole terms of the contract when in writing need not be expressed on the same paper or documents, but may be collected from several letters containing proposals and alternate agreements between the parties: but then the last communication, must be a distinct and unqualified assent, to an equally clear proposal; and if the last letter suggest any new or further proposition, requiring the assent of the other party, or some communication from him to complete the transaction, then no contract or agreement is constituted." 1 Chitty, Gen. Pr. 118.

It is equally clear that Mr. Wood, in his letter of December 11, 1907, the third of the series, did not agree to accept the counterproposal contained in Mr. Brooks's letter by which, it is claimed, that Dougherty released or waived his equity in the five houses. On the contrary, the letter distinctly rejects the proposition and declares that Dougherty will assert his "equity" against Bihlmaier, the trust company and Sutton, the surety. It says: "Notwithstanding the terms of your letter of November 26th, I desire to state, that Mr. Dougherty will use all legal means in his power to secure for himself his full rights against Mr. Bihlmaier, the Tradesmen's Trust Company and Mr. Sutton, the surety. I further desire to state, that, upon behalf of Mr. Dougherty, we will endeavor to hold the Tradesmen's Trust Company to a strict accountability in the matter of the disposition of the houses, and I would suggest that they shall not be sold for any sum which will not net an amount sufficient to pay, inter alia, my client."

The proposition contained in the Brooks letter that Dougherty should complete the work is referred to by Mr.

Wood in his letter of December 11 in the following language: "At this time, I simply beg to advise you I have instructed Mr. Dougherty to complete his work, in accordance with the terms of the agreement entered into between us." What were the terms of the agreement entered into between Wood and Brooks? As pointed out, they are not contained in the written correspondence. It consists of proposals and counterproposals, and discloses on its face that it was not the entire contract between the parties. It is apparent that we must look beyond the correspondence, and invoke the assistance of oral testimony to enable us to ascertain ",the terms of the agreement entered into between" Wood and Brooks in accordance with which Dougherty completed the plumbing of the Bihlmaier buildings. It must be assumed that the trust company accepted the terms of that agreement, as it paid $2,900 for the completion of the work, and it failed to reject those terms in its letter of December 20, 1907, the fourth of the series, replying to Mr. Wood's letter of December 11. The letters disclose on their face that they did not constitute the whole agreement, and the learned court properly admitted oral testimony to show the parts of the agreement referred to but not given in the correspondence. In this there was no error, as is held in many cases: Holt v. Pie, 120 Pa. 425; Schwab v. Ginkinger, 181 Pa. 8; Selig v. Rehfuss, 195 Pa. 200; Anderson v. Surety Co., 196 Pa. 288. In the Schwab case, GREEN, J., delivering the opinion, says (p. 14): "It is evident, therefore, that the whole of the actual contract between the parties, being partly in parol and partly in writing, must all be considered, in order to determine what the contract really was. The principle that a contract which is partly in writing and partly in parol becomes all parol is too familiar to require the citation of authorities. But in this case the application of the written paper to the subject of contention requires the help of the parol testimony. . . . With this testimony before the jury the question would be, What was the contract between the parties?"

The defendants offered no parol testimony and relied on the letters which they put in evidence. Bihlmaier had defaulted on his contract, and there were $1,150 then due, and $1,900 which would fall due as the work progressed, or $3,050 in all, in addition to the $2,600 "deferred payments," secured by the "equity" in the five houses. Dougherty had given a bond for the faithful performance of his contract, and of course had to finish the plumbing work. It was under these circumstances that the trust company took charge of the operation, and Dougherty was brought in contact with the company. Mr. Wood's testimony shows that he, as attorney for Dougherty, had several interviews with Brooks, representing the trust company, in regard to the plaintiff's claim and the completion of the work. It is shown that Wood and Brooks went over the work that remained to be done on the operation and concluded that $2,900 would about cover it. Brooks then told Wood, according to the testimony, that if Dougherty would go on and complete the work according to the specifications, the company would pay Dougherty the $2,900 when the work was finished. Wood said to Brooks that this was satisfactory and he would write him a letter to that effect, which was the letter of November 26, 1907. Wood had some interviews with Brooks between the date of this letter and that of December 11, 1907. In these interviews he told Brooks he wanted his claim in the houses assured and that he "intended to look for those 'equities' both to Mr. Sutton, the original guarantor, to the Tradesmen's Trust Company, and to Mr. Bihlmaier," and asked Brooks for a letter assuring his claim. Brooks was noncommittal on the subject. Failing to obtain this assurance, Wood wrote the letter of December 11. He testifies that Brooks never requested him to surrender Dougherty's "equities" in the five houses and "it was never intended that we should." He further testified that the $2,900 payment did not include the amount due by Bihlmaier to Dougherty, called the "equity," and was not considered in the arrangement with Brooks.

Plaintiff testified that he understood that he was to receive the $2,900 and also the "equity" in the five houses.

It will be observed that the letters themselves do not show any express release or renunciation of the "equity" held by Dougherty in the five houses secured by his contract with Bihlmaier. Mr. Wood's first letter, by its request for subrogation, clearly shows that Dougherty claimed something beyond the $2,900. Conceding that the effect of the last paragraph in Mr. Brooks's letter of November 26 would be to waive Dougherty's "equity" in the houses, as held by the learned court below, there was no acceptance of that proposition by the plaintiff, either in writing or by parol. The letter of December 11 expressly negatives any thought on the part of Dougherty of renouncing his right to this "equity" in the houses. The parol testimony was ample to justify the jury in finding, as they did, that Dougherty did not waive or intend to waive his claim or lien on the five houses, and that the contract, as disclosed by the letters and the parol testimony, was simply that Dougherty should complete the plumbing work for $2,900 to be paid to him by the trust company as the work progressed. When the circumstances of the case, existing at the time of Bihlmaier's failure, are considered, it is unreasonable to suppose that Dougherty agreed to waive his claim on the five houses. He had at that time done work on which there were due and unpaid $1,150, and work of the value of $1,900 was yet to be done to complete the contract, or $3,050 in all, beside the $2,600. If the contention of the defendants be correct, he agreed in consideration of the payment of $2,900 to do the balance of the work and also release his claim for $2,600. Such a proposition would certainly not present itself very favorably to the judgment of a practical business man. The trust company was obligated to complete the buildings, and Dougherty was required by his bond to complete the plumbing in accordance with his contract. Each party, therefore, was required to complete his contract. There is no apparent reason why

Dougherty should be compelled to waive or lose his claim of $2,600. He was not a defaulter in any respect, and was entitled, at the time he made his contract with the Tradesmen's Trust Company, to receive the balance due him on the work as it progressed, and, in addition thereto, the $2,600 which was secured by his "equity" in the five houses. The trust company was not in a position to demand that he release either the houses or Bihlmaier from any part of his claim.

If it be contended that Mr. Brooks's offer in his letter of November 26, 1907, was accepted by the conduct or acts of the plaintiff, it would still be a question for the jury whether such conduct or acts amounted to an acceptance. The contract would have to be ascertained from the letters and the acts of the parties, and in such case the question is for the jury and not for the court: McClure v. Times Publishing Co., 169 Pa. 213.

We think it was error for the learned court below to enter judgment for the defendants notwithstanding the verdict, and, therefore, the judgment is reversed, and the court below is directed to enter judgment on the verdict for the plaintiff and against the defendants.