# Dougherty *v.* Briggs et al, Appellants.

*Contracts—Parol contract—Charge of court—Evidence.*

1. Where the written correspondence between the parties to a contract discloses on its face that it does not constitute the whole agreement, and the terms thereof must be ascertained from the letters and acts of the parties, the contract is for the jury, including the question whether an offer contained in one of the letters of the defendant was accepted by the conduct or acts of the plaintiff.

2. Appellants cannot be heard to object to the adequacy of a charge on appeal where no request was made at the time for fuller or more specific instructions, and no points submitted to the court.

3. Although the court in questioning a witness uses language that might lead to the conclusion that he was asking the opinion of the witness upon facts not in evidence, the testimony given is not to be considered opinion evidence where a careful reading of it shows that the court was eliciting facts which had a direct bearing upon the question at issue.

Submitted May 16, 1911. Appeal, No. 110, Jan. T., 1911, by defendants, from judgment of C. P. No. 1, Phila. Co., March T., 1909, No. 893, on verdict for plaintiff in case of Frank P. Dougherty v. Malcolm Briggs, Jr., and the Tradesmen's Trust Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for money had and received. Before KINSEY, J.

The facts appear in Dougherty v. Briggs, 231 Pa. 68.

At the trial, while Charles S. Wood, Esq., was on the stand, the court asked the following questions:

The Court: "Q. What were those equities from your knowledge of the situation? What is your idea as to them?"

Objected to by Mr. Scott. Objection overruled. Exception for defendants.

"A. The contract that Mr. Dougherty brought to me provided that he was to receive a certain amount of his contract in cash, and all over and beyond that cash. Q. How much did he receive, or was to receive? A. The total amount of his contract was $8,950. He was to be paid during the progress of the work $6,350, and then he was to receive $2,600, in deferred payments of three promissory notes. Those promissory notes were guaranteed. Q. How much were the deferred payments? A. $2,600, to be paid by three promissory notes. Q. How much was he paid in cash, excluding that $2,900? A. I don't remember that now. It was either $2,300 or $3,300, I forget which; $2,300 my recollection is. Then he was to have set side five houses. Q. Wasn't it $3,300? A. $3,300 I think it was; something like that. Q. That would leave about $3,050, and you agreed to do that work for $2,900, you say, the balance of it, and threw off $150? A. No, we did not throw off anything. He was simply to finish the work for $2,900. Q. $150 dropped out of it, and he did it for $2,900, and was paid $2,900? A. Yes, sir. Q. Then that paid the contract in full, didn't it? My question is, what was left over after he completed the work? I want to see where the plaintiff was short. He got his cash in full and I want to see what was left over which passes under the beautiful generic name of equity here. I want to know for my own instruction your exact view of that which you say was equity? A. He was to have a certain amount of cash as the work went along; then he was to have $2,600 in notes for which the five houses were to be collateral. Q. Those were to be Bihl-

maier's notes? A. Yes, sir. Q. And he did it? A. Yes, sir. Q. He got his cash? A. Yes, sir. Q. Now where is the equity? A. The equities were the value in five houses over and above an incumbrance of $1,700 each, which were set apart to him as collateral security for the payment of the three notes. Q. Why would he want the three notes when he was paid for his work? A. No, sir, he has not been paid. Q. If he was paid those three notes, where would his claim have been? A. Then he would have no right to those houses, the equities in the five houses were set aside as collateral security. Q. And would that be a suit against these defendants for the equities there, or against Bihlmaier? A. Against the defendants. The contract provided that these equities shall be set aside in escrow with the Tradesmen's Trust Company. Q. There were five houses and were subject to a first mortgage of what? A. Of $1,700 each." [5]

The court charged in part as follows:

There you have the history of that contract set out in the letter. The question to be determined then, is whether there was a waiver upon the part of Mr. Dougherty of any further interest in that claim that he had originally made when he tendered his offer in reference to the $2,900, that he would claim his rights from the company, and whether when the company refused it, he nevertheless proceeded with the $2,900 completion and got his money? If, of course, there was a waiver, in other words, if he accepted the Trademen's Trust Company construction of this situation, that they were not going to be responsible to him, in other matters, but they would only pay him $2,900 that they were about to agree to pay, that would be an end of his claim. [3]

Bihlmaier agreed to construct fifty houses on Conestoga street. The plaintiff Dougherty put in a bid for plumbing work, amounting to $8,950, $6,350 of which was to be paid in cash, which for all the purposes of this case he practically did receive, and the balance, $2,600, was to

be paid in notes to Bihlmaier, called deferred payments. For securing the payment of that $2,600, Bihlmaier entered into an agreement whereby five houses should be set apart to secure the payment of that $2,600, in notes. That was subsequently transferred, it is alleged, to the Trademen's Trust Company, that they took that agreement with knowledge of its contents and that therefore they are liable here. [4]

*Errors assigned* were (1, 2) the inadequacy of the charge; (3, 4) in charging as above; (5) above ruling on evidence.

*Henry J. Scott,* for appellants.

*Stanley Folz* and *Leon H. Folz,* for appellee.

Opinion by Mr. Justice Mestrezat, May 23, 1911:

This is the second time this case has been here this term. The facts are fully stated in the report of the case and the opinion in Dougherty v. Briggs, 231 Pa. 68. The trial of the cause resulted in a verdict for the plaintiff. Subsequently, the court entered judgment for the defendants non obstante veredicto and the plaintiff appealed to this court. We reversed the judgment, holding that whether Dougherty waived his right to the collateral security for the deferred payments was a question of fact on all the evidence submitted, and directed the court below to enter judgment on the verdict. The judgment having been entered, the defendants have taken this appeal, and contend that there was no evidence to support the contract of waiver, that the charge was inadequate, and that improper and incompetent evidence was submitted to the jury.

The single question for determination by the jury was whether the plaintiff in his subsequent contract with the trust company had waived his "equities" in the five houses reserved under the contract with Bihlmaier to secure the deferred payments of $2,600. It appeared in the evidence, and was not denied, that in the contract

between Dougherty and Bihlmaier the "equities" in the five houses were set aside as collateral for the deferred payments, that the Tradesmen's Trust Company took title to the properties with notice of and assented to the terms of the contract, that the deferred payments were not made to Dougherty by Bihlmaier, and that the five properties were sold by the defendants and they received the proceeds which were sufficiently in excess of the prior mortgage to pay Dougherty's claim. These facts were not disputed, but the defendants claim that Dougherty waived or released his "equities" in the five properties in consideration of the defendants paying him $2,900 to finish the work after Bihlmaier's default. It is manifest that the burden was upon the defendants to show the release or waiver. This they attempted to do by the letters which passed between the parties and which appear at length in the former report of the case. The defendants introduced no parol testimony in support of their position. We held in the former case that the contract between Dougherty and the trust company was partly in parol and partly in writing and was, therefore, a question for the jury, and that the evidence was sufficient to submit to the jury. In the opinion it is said: "The parol testimony was ample to justify the jury in finding, as they did, that Dougherty did not waive or intend to waive his claim or lien on the five houses, and that the contract, as disclosed by the letters and the parol testimony, was simply that Dougherty should complete the plumbing work for $2,900 to be paid to him by the trust company as the work progressed."

The contention that the charge was inadequate cannot be sustained. The trial court submitted the case to the jury on all the testimony, written and parol, to determine whether the plaintiff had waived his rights or "equities" in the five properties. The learned counsel for the appellants excepted to the charge because the court had permitted the jury to determine the contract and did not construe the letters as a waiver of the plaintiff's "equities"

and peremptorily charge the jury to find for the defendants. There was no allegation prior to the present appeal that the charge was inadequate or insufficient. If the appellants desired any specific or fuller instructions on any question involved in the case, they should have made the request by submitting points to the court.

The testimony of Mr. Wood was not opinion evidence. The language used by the learned judge in the first question put to the witness was unfortunate and might lead to the conclusion, as maintained by the appellants, that he was asking simply the opinion of the witness upon facts not in evidence. A careful reading of the testimony quoted in the fifth assignment, however, will show that the court was eliciting facts which had a direct bearing upon the question at issue in the case.

The case having been fully considered on the former appeal, we think any further discussion is unnecessary.

The judgment is affirmed.