## Clark & Son v. Ley.

Contract—Acceptance—Letters — Proviso as to acceptance—Construction —Ambiguity—Parol evidence—Evidence—Inspection of goods — Satisfaction of seller.

1. When a written contract is not ambiguous in its terms, parol evidence of the interpretation put upon it by the parties themselves is irrelevant.

2. Where an offer to buy lumber is made by letter, and the offeree accepts, "providing inspection is fair and satisfactory," the proviso constitutes a new offer, which must be accepted by the original offerer before a complete contract becomes effective. The meaning of such a proviso is that the inspection is to be satisfactory to the party to be protected, i. e., in the case at bar, the seller.

Rule for new trial and rule for judgment n. o. v. C. P. Crawford Co., Sept. T., 1920, No. 48.

McClintock & McClintock, for plaintiffs.

Frank J. Thomas and John A. Northam, for defendant.

PRATHER, P. J., July 18, 1921.—This action was brought to recover damages for the breach of an alleged contract concerning the purchase and sale of a quantity of lumber.

The contract relied upon and pleaded is confined to a written order or letter of plaintiff, addressed to defendant, containing an offer, and defendant's answer thereto, which are set forth as follows:

"SHIPPING ORDER

No. 291    Haniel Clark & Son,
                Manufacturers–Wholesalers, Hardwood Lumber.
To John Ley, of Titusville, Pa.
    Please ship to Haniel Clark & Son,
                Destination to be furnished later,
                                Description.

All the 4/4 No. 1 Common and Better Chestnut piled or stocked at the siding at Fieldmore Springs station on the New York Central R. R.    This stock is to include the few pieces of No. 2 Common or S. W. which might be included in the piles with the distinct understanding that there shall not be to exceed 5 per cent. of the total number of feet of the lower grade of No. 1 Common. It is estimated that there will be three carloads of this stock.

    Prices No. 1 & No. 2 Common    $32.00 per M'
                F A S                          42.00  "    "

In case we decide to load the Common & F A S in separate cars we are to pay you 50c per M' for F A S so loaded in addition to the prices given above.

    Terms: 2 per cent. off 10 days from arrival.

    We think we will be able to load this stock at your convenience within the next 2 or 3 weeks.          HANIEL CLARK & SON
                                By ——————————————————."

Haniel Clark & Son,                        "Titusville, Pa., April 27, 1918.
    Union City, Pa.

Dear Sirs: Your order for chestnut at Fieldmore Springs, Pa., received, and will load same for you providing inspection is fair and satisfactory.

Regarding the oak that you saw will let you have it at $26.00, $36.00 and $56.00 as talked if you want it within the next ten days.    Chestnut and oak prices are F. O. B. cars Fieldmore Springs and Titusville, Pa.

                                Signed,    J. D. LEY."

Following the exchange of letters as set forth there was no other communication, oral or written, between the parties until the first week of July, 1918, when plaintiff called defendant on the 'phone and was informed by him that the lumber had been sold to another party.

Plaintiff, having thus discovered that it was now out of the power of defendant to furnish the particular lumber mentioned, opened up a correspondence with him, urging its right to have this lumber or its equivalent.

To these letters defendant replied, expressing his regret at his inability to comply with plaintiff's request, and expressed his willingness or desire to go into the market and procure similar lumber to the satisfaction of plaintiff.

While this testimony was admitted, we do not regard it as relevant to the issue.    At most, defendant's declared willingness to do something he thought he was required to do, or ought to do, could impose no obligation upon him other than that required by the alleged contract: McClure *v.* Times Publishing Co., 169 Pa. 213.

It is only when a written contract is ambiguous that the interpretation placed upon it by the parties themselves becomes a relevant inquiry in its construction.

1 D. & C.

Where a contract is partly in writing and partly in parol, the rule of interpretation is stated in Schwab *v.* Ginkinger, 181 Pa. 8, as follows: "It is evident, therefore, that the whole of the actual contract between the parties, being partly in parol and partly in writing, must all be considered in order to determine what the contract really was. The principle that a contract which is partly in writing and partly in parol becomes all parol is too familiar to require the citation of authorities. But in this case the application of the written paper to the subject of contention requires the help of the parol testimony. . . . With this testimony before the jury the question would be, what was the contract between the parties?"

In the case before us, however, there is no parol contract to consider. Either plaintiff's written offer under date of April 25, 1918, and defendant's written answer dated April 27, 1918, constitute the contract or there is none. Does defendant's letter in answer to plaintiff's offer modify or qualify the offer? If so, it was not an acceptance.

If defendant's answer, or acceptance, was conditioned upon some modification in the offer or specific addition thereto, then plaintiff was called upon to act or speak indicative of his assent to defendant's counter-proposal. Plaintiff's reply or conduct would be evidence of his mind. Plaintiff might by his conduct have brought himself within the principle recognized in Dougherty *v.* Briggs, 231 Pa. 68, 80, and have insisted that it was evidence of his acceptance of defendant's terms.

But did plaintiff do anything to bring itself within this doctrine? It did nothing by conduct or answer between April 27th and July 3rd to inform defendant it was accepting his terms or relying upon taking the lumber mentioned.

If defendant still had the lumber on July 3rd and afterward, while the correspondence was being carried on, there would be some color to plaintiff's position with reference to the evidential value of such correspondence, but under the undisputed facts we think these letters were incompetent for any purpose.

If we are correct in this conclusion, then the writings pleaded furnish the entire evidence of the alleged contract and must be interpreted in their own light.

In Dougherty *v.* Briggs, 231 Pa. 68, 75, the Supreme Court said: "When it is sought to establish a contract by letters which pass between the parties, containing proposals, answers and counter-proposals, it must be made to appear that at some point in the correspondence there was a definite and unqualified proposal by one party which was unconditionally and without qualification accepted by the other party. In other words, the minds of the parties must come together on all the essential terms of the alleged contract. This is the established doctrine, and is recognized in our cases: Slaymaker *v.* Irwin, 4 Whart. 369; Allen *v.* Kirwan, 159 Pa. 612. In the former case Mr. Justice Sergeant, delivering the opinion, quotes with approval the rule announced by Mr. Chitty in his General Practice as follows (page 380): 'The whole terms of the contract when in writing need not be expressed on the same paper or documents, but may be collected from several letters containing proposals and alternate agreements between the parties; but then the last communication must be a distinct and unqualified assent to an equally clear proposal; and if the last letter suggest any new or further proposition requiring the assent of the other party, or some communication from him to complete the transaction, then no contract or agreement is constituted:' 1 Chitty, Gen. Pr., 118."

In Joseph *v.* Richardson, 2 Pa. Superior Ct. 208, 212, the Superior Court, speaking through Rice, P. J., said: "To constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is in effect a counter-proposal. This is elementary law."

In Clements *v.* Bolster, 6 Pa. Superior Ct. 411, speaking through Smith, J., the Superior Court said: "According to all the authorities, a contract is not created by proposals and counter-proposals; it arises only from the acceptance of a proposal. And this acceptance must be in exact conformity with the proposal; the minds of the parties must meet on every point presented in the offer. An acceptance qualified in any manner, or accompanied by any reservation or new proposal, is not that union of minds in which the law recognizes a contract. An offer is not converted into a contract by a response proposing a deviation from its terms; it becomes a contract only when accepted in precise accordance with its terms."

In Swing *v.* Walker, 27 Pa. Superior Ct. 366, 372, Henderson, J., speaking for the Superior Court, said: "To bind the parties, an acceptance must be in exact conformity with the proposal. A qualified acceptance does not constitute a contract." See Ehrenstrom *v.* Hess, 262 Pa. 104.

We are, then, to inquire whether the proviso in defendant's answer was a qualified acceptance or injected any modification into plaintiff's offer.

The very purpose of introducing a proviso into any statement or proposition is to modify or qualify its ordinary and usual import. In legislation its purpose is to save some privilege or exemption to some person or institution affected thereby. In contracts it secures to the party interested some right or privilege that he otherwise would be deprived of.

The mere introduction of a provisionary clause into a contract by a party thereto is significantly expressive of his dissent from the contract as written, and that he assents to it only upon condition that, provided that the other contracting party concedes to him the specific guaranty not mentioned or sufficiently provided in the contract as originally written or proposed.

It may be argued that the law presumes the inspection will be fair, but even so, it does not presume that it will be satisfactory.

Satisfactory to whom? Satisfactory to the person it was intended to protect. It might not have suited plaintiff company to bind itself to make an inspection satisfactory to defendant. It was called upon to make a counter-proposal, either rejecting or accepting the condition imposed. Plaintiff's silence left the transaction unfinished. It is a well known fact that the inspection of lumber is not reduced to an exact science. Consequently, inspectors, in their classification or grading of lumber, may be liberal to their immediate employer, the buyer, and, therefore, severe to the seller.

Under the clause providing for a satisfactory inspection, defendant was the one to be satisfied, and if he should object to an inspection when had, on the ground that it was not satisfactory, and do so in good faith, whether the inspection was or was not fair, his objection would prevail: Singerly *v.* Thayer, 108 Pa. 291; Thaler Bros. *v.* Greisser Construction Co., 229 Pa. 512; Stuart & Peterson Co. *v.* Newton, 52 Pa. Superior Ct. 158, 163.

Defendant did not accept plaintiff's offer.

It follows that plaintiff company was called upon to accept the condition defendant injected into its offer before there could be a meeting of the minds of the contracting parties. This could not be a tacit, subjective acceptance;

1 D. & C.

Clark & Son *v.* Ley.

it must have been given expression in conduct or words. There is no evidence of such acceptance. Consequently, the construction of the contract was solely a matter of law for the court.

The same conclusion would have been reached upon demurrer by affidavit in the way of a defence, but the question is still an open one.

It follows that defendant's request for binding instructions should have been affirmed.

Now, July 18, 1921, rule for judgment *n. o. v.* absolute, and upon the question reserved judgment is directed to be entered for defendant upon payment of the required jury fee.

From Otto Kohler, Meadville, Pa.